**Sharon WHITE, Plaintiff, Appellant,**

v.

**Thomas VATHALLY and City of Haverhill, Defendants, Appellees.**

**No. 83–1767.**

United States Court of Appeals, First Circuit.

Argued March 5, 1984.

Decided May 1, 1984.

Kevin G. Powers, Lynn, Mass., with whom Johnson & Powers, P.C., Lynn, Mass., was on brief, for plaintiff, appellant.

Ashod N. Amirian, Haverhill, Mass., with whom Paul Kazarosian, and Kazarosian, Kazarosian & Colella, Haverhill, Mass., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and GIERBOLINI,* District Judge.

BOWNES, Circuit Judge.

This is an employment discrimination action under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, and under 42 U.S.C. § 1983. Plaintiff Sharon White claims that defendants, the City of Haverhill and former Mayor Thomas Vathally, discriminated against her on the basis of her sex in failing to appoint her to a permanent position as Health Department code enforcement inspector. Following a two-day bench trial, the district court issued a published opinion, *White v. Vathally*, 570 F.Supp. 1431 (D.Mass.1983), and entered judgment for defendants. Plaintiff appeals, alleging errors of law and fact in the district court's judgment.

The factual background is fully set out in the district court's opinion, and only a brief summary is required here. Plaintiff worked for the City of Haverhill as a temporary Health Department code enforcement inspector from March 26, 1979, through September 19, 1980, when her CETA appointment terminated. She had completed some college credits in psychology and held an associate's degree, but did not have a bachelor's degree. Her work included checking buildings for health code violations and testing the lead content of paint. On August 31, 1980, Vincent Belfiore, another code enforcement inspector, retired from his job, creating a vacancy. At plaintiff's request, Mayor Vathally met

with her on September 2, 1980; he informed her that there were no positions available at that time. From October 2, 1980, through October 5, 1980, defendants advertised the availability of the position left vacant by Belfiore's retirement; the advertisements did not mention a need or preference for a college degree. Plaintiff applied for the job, submitting an application, resume, cover letter, and letters of recommendation to Vathally. Vathally asked Dr. Grillo, the city's environmental consultant, to review the applications of the two finalists for the job, plaintiff White and Domenic Badolato. Badolato, a white male, had been employed as a code enforcement inspector under the CETA program from mid-June of 1978 through mid-December of 1979; he held a bachelor's degree with a major in biological science, and had completed some post-graduate credits. Grillo, who had recommended Badolato for a previous job with the city, and who was listed by Badolato as a reference, recommended Badolato for the job on the basis of Badolato's superior educational background. Without consulting anyone else, Vathally, the city's sole appointing authority, hired Badolato.

In order to prove an individual claim of discriminatory treatment, whether under the Constitution or under Title VII, a plaintiff must prove purposeful discrimination, *see Washington v. Davis*, 426 U.S. 229, 239–41, 96 S.Ct. 2040, 2047–48, 48 L.Ed.2d 597 (1976). Where direct evidence of discriminatory intent is lacking, we have recognized that the analytical framework for proving discriminatory treatment set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), is equally applicable to constitutional and to Title VII claims. *T & S Service Associates v. Crenson*, 666 F.2d 722, 724 n. 2 (1st Cir.1981). Applying the *McDonnell Douglas* standard, the district court found that plaintiff established a *prima facie* case of discriminatory treatment; the parties do not dispute that finding, and it is not in issue on appeal. It is the court's

* Of the District of Puerto Rico, sitting by designation.

subsequent findings that defendants met their burden of "articulat[ing] some legitimate, nondiscriminatory reason" for their action, *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, and that plaintiffs failed to show the proffered reason to be a pretext for discrimination, *id.* at 804, 93 S.Ct. at 1825, which plaintiff contends are erroneous.

■■■ It is important to remember that the ultimate issue in discriminatory treatment cases is whether the plaintiff proves intentional discrimination by a preponderance of the evidence, and that the allocation of evidentiary burdens under *McDonnell Douglas* is

> merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.

*Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 2950, 57 L.Ed.2d 957 (1978). The burden of persuasion on the issue of discriminatory intent always remains with the plaintiff, and the "legally mandatory, rebuttable presumption" of unlawful discrimination raised by a *prima facie* showing compels judgment for the plaintiff only "[i]f the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253 & 254, 101 S.Ct. 1089, 1093 & 1094, 67 L.Ed.2d 207 (1981). If the defendant carries the burden of articulating a legitimate, nondiscriminatory reason for his actions, the presumption of discrimination "drops from the case," *id.* at 255 n. 10, 101 S.Ct. at 1095 n. 10, and plaintiff's burden of rebutting defendant's proffered reason "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256, 101 S.Ct. at 1095.

The district court, citing *Burdine,* correctly stated the defendant's burden of producing evidence of a legitimate, nondiscriminatory reason as follows:

> [T]he employer only need raise a genuine issue of fact as to whether it discriminated against the plaintiff by introducing evidence setting forth the reason for the plaintiff's rejection.
>
> . . . .
>
> The employer does not have the "burden of persuading the court that it had convincing, objective reasons for preferring the chosen applicant above the plaintiff."

*Burdine, supra,* at 257 [101 S.Ct. at 1095]. The employer need only produce evidence sufficient to allow the factfinder reasonably to conclude that the employment decision was not motivated by discriminatory animus. *Id.* A weak correlation between the articulated criteria and job performance may support an inference that the employer's proffered explanation was a pretext for illegal discrimination, but it does not compel such an inference.

The district court also noted that "the employer's explanation of legitimate reasons must be clear and reasonably specific," rather than "[a] 'passing reference by just one of many witnesses to some deficiency' in the plaintiff's qualifications or a vague averment of good faith," quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n. 5 (1st Cir.1979). It recognized that one purpose of articulating reasons is to give the plaintiff a fair opportunity to respond, *see Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95, and found that defendants adequately articulated Badolato's superior educational qualifications as a legitimate reason for preferring him over White.

■■■ Although plaintiff argues that educational qualifications were not reasonably related to the requirements of the job in question and thus could not constitute a "legitimate" explanation, the district court expressly found to the contrary. On appeal, we cannot say that it was clear error to find that an employer might reasonably regard Badolato's educational qualifica-

tions as indicating "self-discipline and an ability to complete tasks and follow instructions."

■ Plaintiff raises a more troublesome question concerning the evidentiary basis for the court's finding that defendants met their burden of production. The articulation of reasons must take place "through the introduction of admissible evidence." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094. "An articulation not admitted into evidence will not suffice. Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." *Id.* at 255, n. 9, 101 S.Ct. at 1094, n. 9. The district court found as follows:

> In his answers to interrogatories and requests for admissions, and in his deposition, Vathally repeatedly stated that the decision to hire Badolato was based on Badolato's superior qualifications for the job—specifically, his educational background. Vathally testified at trial that he based his decision on Grillo's recommendation. Grillo in turn testified that he believed Badolato's bachelor's degree and extensive training in the sciences made him better qualified for the job.

Vathally's answers to interrogatories and requests were apparently filed with the court in the course of discovery, and the relevant excerpts from his deposition were appended to plaintiff's motion for summary judgment.[1] In reviewing the record, however, we find no indication that those answers to interrogatories and requests for admissions or the deposition were actually introduced in evidence at trial pursuant to Federal Rules of Civil Procedure 32, 33 and 36.

Plaintiff argues that the court committed reversible error in relying on evidence which was not introduced at trial. The district court explained its use of the materials as follows:

> [W]hen a reason is supplied by an answer to an interrogatory or in a deposition not strictly "introduced," this defi-

ciency may be cured by considering witness testimony and reasonable inferences therefrom. *See Banerjee v. Board of Trustees of Smith College*, 648 F.2d 61, 63 n. 4 (1st Cir.), *cert. denied*, 454 U.S. 1098 [102 S.Ct. 671, 70 L.Ed.2d 639] (1981); *cf. Burdine, supra* at 255–56 [101 S.Ct. at 1094–95] (requiring employer to articulate reason serves in part the purpose of "fram[ing] the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext").

In *Banerjee*, the defendant's articulated reason "was supplied by an answer to an interrogatory which the record shows was accepted by plaintiff. If, strictly, it was not 'introduced,' any deficiency was repaired by Smith's subsequent testimony in connection with plaintiff's response." 648 F.2d at 63 n. 4. We found that even "if [the defendant's] answer to the interrogatory was inadequate," *id.* at 64, the evidence introduced at trial, including the minutes of twelve committee meetings together with the testimony of the committee chairman and most of its members, *id.* at 64 n. 5, "more than met the requirements" under *Burdine*, *id.* at 64. The evidence introduced at trial in the present case was less comprehensive than in *Banerjee;* here, the decision maker was an individual rather than a committee, and his deliberations were apparently not recorded in detail. Nevertheless, as in *Banerjee*, we look to the evidence actually introduced at trial to determine whether the district court's finding is adequately supported.

Defendant Vathally testified on direct examination that he "relied heavily on [Dr. Grillo's] opinion because it had to do with the department ... that deals with health and welfare of the citizens. And it was through his opinion that I based my final decision." Dr. Grillo, in turn, testified that

> [Vathally] asked me in my opinion who I thought was the better qualified, looking at the resumes. And I did, and I told him at the time I thought Mr. Bad[o]lato

---

1. We do not consider whether plaintiff, having offered excerpts from the defendant's deposi-

tion, is now estopped to complain of their use by the district court.

was. And my reasons for saying so were that he had a [b]achelor's degree and some postgraduate credits in the sciences which are applicable to Health Department duties.

Our review does not extend to the quality of business judgment reflected in this testimony, *Loeb*, 600 F.2d at 1012 n. 6, but only to the question whether the testimony suffices to raise a genuine issue of fact as to defendants' intent, or, otherwise stated, whether it suffices to support a finding of no discriminatory intent. *See Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95. The purpose of requiring a defendant to articulate a legitimate, nondiscriminatory reason in this context is "to meet the plaintiff's prima facie case" and also "to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* at 255–56, 101 S.Ct. at 1094–95. In our view, the trial testimony by itself was adequate to support a finding that defendants lacked discriminatory intent. Furthermore, there can be no question that plaintiff was fully· aware of defendants' explanation and had ample opportunity to attempt to demonstrate pretext. The testimony here was neither a merely passing reference nor a vague averment of good faith, *cf. Loeb*, 600 F.2d at 1012 n. 5 (insufficient articulation), but rather a clear and reasonably specific explanation, *see Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096. Vathally's unintroduced deposition, and his answers to interrogatories and requests for admissions, were entirely cumulative. They merely restated the explanation elicited at trial, namely, that defendants' hiring decision was based on Badolato's superior educational qualifications. Although it would have been improper for the district court to rely on those extra-evidentiary documents in weighing the merits of the case, we assume that the court mentioned them only to corroborate its finding that plaintiff had fair notice of defendants' position. Because the trial testimony alone was sufficient in this respect, we find no reversible error.

Having found that the defendants met their burden of articulating a legitimate, nondiscriminatory reason, the district court proceeded to consider whether plaintiff showed by a preponderance of the evidence that defendants' articulated reason was a pretext for discrimination. The court found that educational qualifications were "not so weakly correlated with job performance as to support an inference of pretext for discrimination," and that the evidence with respect to other criteria, *viz.* continuity and references, was "insufficient to support an inference of pretext based on the relative qualifications of plaintiff and Badolato." It also noted that the evidence did "support a finding that Badolato's educational qualifications were not the sole reason Vathally chose him over plaintiff." The court nevertheless concluded that it could not find from a preponderance of the evidence that Vathally was "motivated by a discriminatory animus" or that "plaintiff would have been appointed but for her sex."

Plaintiff contends that in order to prevail she needed only to show that defendants' proffered reason was not the true or entire explanation for the decision. She argues, in effect, that the burden of proving "pretext" may be met simply by refuting defendants' articulated reason. We do not agree. From *McDonnell Douglas* to *Burdine*, the Supreme Court has consistently held that the required showing of pretext consists of proof "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were *a pretext for discrimination.*" *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093 (emphasis added); *cf. McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. at 1826 (proof "that the presumptively valid reasons for [rejection] were in fact a coverup for a ... discriminatory decision"). The plaintiff's burden of showing "that the proffered reason was not the true reason for the employment decision ... merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Bur-*

*dine,* 450 U.S. at 256, 101 S.Ct. at 1095. Thus, although the plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence," *id.,* such a showing does not relieve the plaintiff of the burden of persuasion on the ultimate issue of discriminatory intent. *Id.* Merely casting doubt on the employer's articulated reason does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent, for "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons" in the first place. *Id.* at 254, 101 S.Ct. at 1094. To hold otherwise would impose on the defendant an almost impossible burden of proving "absence of discriminatory motive," *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1978) (per curiam); *id.* at 29, 99 S.Ct. at 297, 298 (Stevens, J., dissenting), and would improperly revive the presumption in plaintiff's favor which was raised by the *prima facie* showing but "dispel[led]" by the defendant's articulation of reasons, *Furnco,* 438 U.S. at 578, 98 S.Ct. at 2950. Moreover, any requirement that a defendant prove by a preponderance of the evidence that it in fact relied on its proffered reasons would vitiate the function of the pretext showing in the *McDonnell Douglas* analytical scheme. *Sweeney,* 439 U.S. at 24–25 n. 1, 99 S.Ct. at 295 n. 1.

In discriminatory treatment cases like the present one, the plaintiff always has the burden of persuading the fact finder by a preponderance of the evidence that intentional · discrimination has taken place, whether or not the presumption of discrimination arising from a *prima facie* case applies. Of course, when direct evidence is lacking, this burden may be met by an adequate showing of circumstantial evidence from which inferences concerning intent may properly be drawn. *See Burdine,* 450 U.S. at 252–56, 101 S.Ct. at 1093–95. The district court's finding in this case that plaintiff failed to prove intentional discrimi-

nation is amply supported by the evidence. Defendants' proffered explanation was not clearly "unworthy of credence," *id.* at 256, 101 S.Ct. at 1095; and, even if other undisclosed motives entered into the decision, we think that the district court was correct in concluding that the evidence as a whole did not support an inference of unlawful sex discrimination.

*Affirmed.*