Bernardo **GUILLERMETY MENDEZ, Plaintiff,**

v.

**PUERTO RICAN CEMENT CO., INC., Defendant.**

No. Civ. 98–2138 (JP).

United States District Court, D. Puerto Rico.

July 19, 1999.

**178**

Neftali Cruz Perez, Martinez Alvarez, Menendez Cortada & Lefranc Romero, San Juan, PR, for plaintiff.

Manuel A. Quilichini Garcia, Totti & Rodriguez Diaz, San Juan, PR, for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

### I. INTRODUCTION AND BACKGROUND

The Court has before it Defendants' Motion for Summary Judgment (**docket No. 12**) and Plaintiff's Opposition to Motion for Summary Judgment (**docket No. 15**). Plaintiff Bernardo Guillermety Méndez ("Guillermety") filed a Verified Complaint on October 13, 1999, alleging causes of action under the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 ("ADEA"); the Fair Labor Standards Act, 29 U.S.C. § 201 and § 216

---

1.  Defendant claims that Plaintiff has failed to satisfy his burden on summary judgment as to "the ADEA or other federal laws." Although the motion discusses Guillermety's Title VII national origin claims, there is no specific mention of or argument concerning Plaintiff's claims under the Fair Labor Standards Act. Although a district court has the power to grant summary judgment sua sponte, this power "should be exercised sparingly," and the party opposing summary judgment must have had reason to believe that the Court might reach the issue disposed of and a fair opportunity to present evidence on its behalf.

("FLSA"); Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"); Puerto Rico's Act 100 of June 30, 1959, as amended, P.R.Stat. tit. 29, § 146 ("Law 100"); and Puerto Rico's Act 80 of June 30, 1976, P.R. Stat. tit. 29, § 185 ("Law 80").

Guillermety alleges that he was illegally terminated by Defendant Puerto Rican Cement Company, Inc. ("Puerto Rican Cement") based on his age and Colombian national origin. In addition, Guillermety asserts that he did not receive his vacation pay, nor did he receive any compensation for sick leave or severance pay after his termination. Defendant purportedly moves for summary judgment to dismiss all Plaintiff's claims; however, Defendant only presents arguments as to the ADEA, Title VII, Law 80, and Law 100 claims.[1]

### II. UNCONTESTED FACTS

Based on the record and parties' contentions, the following facts are undisputed.

Plaintiff Guillermety was born on September 23, 1947, and at the time of his termination from Puerto Rican Cement, he was 50 years old and within the protected age group under the ADEA. During the last quarter of 1996, Juan Taraza interviewed and hired Guillermety for a position as a project engineer with Puerto Rican Cement. On November 18, 1996, Guillermety was hired as a project engineer, an at-will employee, to work on the "Las Orquídeas" Project.

---

*Jardines Bacata, Ltd., v. Diaz–Marquez,* 878 F.2d 1555, 1561 (1st Cir.1989) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *National Expositions, Inc. v. Crowley Maritime Corp.,* 824 F.2d 131, 133–34 (1st Cir.1987)). In this case, aside from the reference to "other federal laws," there is no discussion of Plaintiff's Fair Labor Standards Act claim nor evidence presented by either party. Thus, the Court will not address the validity of Plaintiff's Fair Labor Standards Act claim in ruling on Defendant's Motion for Summary Judgment.

Also on November 18, 1996, Plaintiff received, read, and signed a copy of Puerto Rican Cement's Policy on Sexual Harassment. During his tenure with Puerto Rican Cement, Taraza was Plaintiff's immediate supervisor. Guillermety's salary throughout his employment was $3,500.00 per month.

During the first week of June 1997, José E. Rosich, Puerto Rican Cement's Director of Industrial Relations, and Miguel Nazario, President of Puerto Rican Cement, received an anonymous letter complaining about Plaintiff's treatment of his fellow workers and of several inappropriate practices. On June 9, 1997, Guillermety was informed by Rosich and Taraza that he was being placed on paid leave while Puerto Rican Cement conducted an investigation of the several allegations leveled against him. Puerto Rican Cement's management met with Guillermety on June 19, 1997 and recommended that he resign from his position. On or about June 27, 1997, Rosich sent Guillermety a letter informing him of his termination, effective June 30, 1997.

Félix Porras was an employee supervised by Guillermety during his time at Puerto Rican Cement. One of the requirements for Guillermety's position was that the person had to be an engineer, and neither Porras nor Víctor Rosario were engineers. Therefore, neither Porras nor Rosario met the requirements of Plaintiff's position after he was terminated. Rosich, Taraza, and Benjamín Román are all older than Plaintiff.

## III. DISCUSSION

### A. Summary Judgment in the Context of ADEA and Title VII Cases

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See Goldman v. First National Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). To survive a motion for summary judgment in the context of an ADEA or Title VII case, "a plaintiff must establish at least a genuine issue of material fact on every element essential to his case in chief." *Vega*, 3 F.3d at 479 (quoting *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991)). Thus, a plaintiff must adduce "some minimally sufficient evidence to support a jury finding that he has met his burden." *Id.* Ultimately, the non-movant must provide specific facts supporting her claim that the real reason behind the employer's decision was discrimination or driven by "discriminatory animus." *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990).

Defendant argues that Guillermety has failed to establish a prima facie case under Title VII and the ADEA, and further, that there were legitimate business reasons for Guillermety's dismissal. In addition, Puerto Rican Cement asserts that Plaintiff cannot demonstrate he was fired because of his age or national origin.

■ Courts have recognized two distinct frameworks for assessing evidence of discrimination, based on whether the evidence proffered by plaintiff is direct or circumstantial in nature. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). At all times, however, and regardless of the type of evidence presented, the plaintiff bears the ultimate burden of proving that the adverse employment action was taken on account of age or national origin in a Title VII or ADEA case. *See Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 12 (1st Cir.1998) (citing *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 332 (1st Cir.1997); *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 723 (1st Cir.1994)). Thus, on summary judgment, Defendant will prevail only if Plaintiff failed to "adduce sufficient evidence from which a rational fact finder could return a verdict in his favor," *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *American Airlines, Inc. v. Cardoza–Rodriguez*, 133 F.3d 111, 116 (1st Cir.1998)), "without resorting to 'conclusory allegations, improbable inferences, and unsupported speculation.'" *Id.* (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

If, as in the instant case, a plaintiff does not have direct evidence of discrimination in support of his claim, the "familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, comes into play." *Goldman v. First National Bank of Boston*, 985 F.2d 1113 (1st Cir. 1993) (ADEA case) (citations omitted); *Pagano v. Frank*, 983 F.2d at 347–48 (Title VII national origin discrimination case). Under the *McDonnell Douglas* framework, Plaintiff must first demonstrate that he (1) belongs to a protected class; (2) met the employer's legitimate job performance expectations, (3) experienced an adverse employment action, and (4) was replaced by a person with roughly equivalent job qualifications. *See id.*

Once the prima facie case is established, the burden shifts to the defendant to produce a valid non-discriminatory reason for the adverse employment action. *See Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 672 (1st Cir.1996); *Pagano*, 983 F.2d at 347–48. The defendant's burden under the *McDonnell Douglas* framework is only a burden of production; the burden of persuasion remains with the plaintiff. *See Sanchez Sepulveda v. Motorola Electronica De Puerto Rico, Inc.*, 988 F.Supp. 34, 37 (D.Puerto Rico 1997) (Pieras, J.). After a defendant has made such a showing, "the presumption raised by the prima facie case is rebutted and drops from the case." *Id.* (citing *Hidalgo*, 120 F.3d at 332). In the final stage, the burden of production returns to the plaintiff who must show that the defendant's stated reason for the adverse employment action was false and a pretext for discrimination. *Mulero–Rodriguez*, 98 F.3d at 673; *Pagano*, 983 F.2d at 348.

The Court finds that Plaintiff has failed to satisfy his prima facie case of age or national origin discrimination, but not for the reasons proffered by Defendant. To meet the second prong of his prima facie case, Guillermety must show that he has satisfied his employer's legitimate job expectations. Defendant contends that Guillermety fails to meet this prong because the investigation performed by Puerto Rican Cement as a result of complaints made regarding Guillermety's behavior, showed that he was acting inappropriately. Specifically, Puerto Rican Cement asserts that Guillermety mishandled the company's monies and made irregular purchases, and further, made improper sexual advances towards employee Moraima Ortiz. Thus, Defendant claims it had to terminate Guillermety because he was not satisfying the requirements and expectations of his managerial position.

■ In making its argument, Defendant is attempting "to incorporate its own burden to articulate a legitimate non-discriminatory reason for [terminating plaintiff],

into the legitimate job expectation prong of the prima facie case." *Ortiz Rodriguez v. Banco Popular de Puerto Rico,* 27 F.Supp.2d 309, (D.Puerto Rico 1998) (Pieras, J.) (citing *Brennan v. GTE Government Systems Corp.,* 150 F.3d 21, 27 (1st Cir.1998)). As stated previously by this Court, requiring a plaintiff at the prima facie stage to refute the employer's reason for termination would go "beyond the confines of a prima facie case." *Id.* Rather, all a plaintiff need show at the prima facie stage is that he has a record of acceptable performance and has met the demands of his job. *See id.*

Thus, Guillermety need not refute Puerto Rican Cement's reasons for his dismissal at the prima facie stage, but he must provide evidence that he met the legitimate expectations of his job. Although a plaintiff's burden at the prima facie stage is minimal, he must adduce "some minimally sufficient evidence to support a jury verdict that he has met his burden." *Vega,* 3 F.3d at 479; *see also Ortiz Rodriguez,* 27 F.Supp.2d at 314 (plaintiff's evidence of positive performance evaluations sufficient to satisfy burden at prima facie stage on summary judgment).

■ In the instant case, aside from Plaintiff's unsupported assertion that "his supervisor Engineer Taraza admitted that his work was satisfactory," Plaintiff offers no proof to show that he was performing satisfactorily. (Pl.'s Opp'n. at 2, ¶ 4). Plaintiff has not provided the Court with Taraza's deposition testimony, performance evaluations, or any other evidence to support his claim that he was meeting Puerto Rican Cement's legitimate job expectations. Thus, Guillermety has failed to satisfy his burden on summary judgment to produce evidence in support of his ADEA and Title VII claims. *See Medina–Munoz,* 896 F.2d at 8 (plaintiff must provide more than conclusory allegations in support of burden on summary judgment).

■ Even if Guillermety had satisfied his prima facie case, however, the Court would still grant summary judgment for Defendant because Plaintiff has failed to show that either age or national origin was the reason for his termination. *See id.* at 9; *Mulero–Rodriguez,* 98 F.3d at 672. There are many forms of circumstantial evidence that an employment discrimination plaintiff may present to show that the employment decision was based on illegal discrimination. This evidence includes, but is not limited to, statistical evidence showing disparate treatment by the employer of members of the protected class, comments by decision-makers which denigrate those in the protected class, differential treatment in the workplace, and the replacement of the plaintiff by someone outside of the protected class. *See Mesnick v. General Electric Co.,* 950 F.2d 816, 824 (1st Cir.1991) (citations omitted).

Plaintiff presents what he claims to be denigrating comments in the workplace as well as differential treatment of younger employees. In support of these claims, Guillermety provides an affidavit, which essentially reiterates Guillermety's deposition testimony. In his deposition, Guillermety stated the following regarding age and national origin based comments made to him:

Q: Okay. How did he [Felix Porras] refer to you in a derogatory manner, what phrases did he use that you understood to be derogatory?

A: Old Colombian (viejo colombiano), foreigner, that I didn't come from Puerto Rico, because of the way I speak, because I don't speak like the people of Puerto Rico, I guess, and that they didn't know if I was an engineer and that they doubted that I was an engineer.

Q: Okay. At the times when he was making … when he spoke about you in a derogatory manner, he was your subordinate.

A: That is correct.

[questions about Mr. Santiago and Mr. Rosario]

Q: Let me ask you, did Mr. Juan Taraza ever use a derogatory phrase when referring to you?

A: I believe he did once.

Q: When was that?

A: At this time, counselor, I do not recall.

Q: What was the phrase?

A: An older person, let's say, an older person to deal with young people, that I had to have more patience in dealing with them.

Q: Do you know Juan Taraza's age?

A: I think that he is the same age as someone ... as an uncle of mine ... he must be around 71 or 70.

Q: That is, we may assume, he is older than you.

A: That is correct.

Q: Okay. What about Mr. Rosich?

A: I believe that Mr. Rosich is a lot older than Mr. Taranza and I.

Q: Okay. And the remark Mr. Taraza made to you was that you were older than those young men, that you had to be more patient with them.

A: The same thing happened once with Mr. Rosich, when I went to speak with him in his office. He told me to be patient and that, whatever decision I made, I had to let him know, but that I really had to be more patient in dealing with the situation.

Q: Okay. Neither Mr. Taranza nor Mr. Rosich used phrases alluding to your nationality, did they?

A: On one occasion Mr. Rosich alluded to the fact that ...

Q: What did he say?

A: That I was Colombian and that I had to be aware that I was in another country in order to deal with employee situations, no.

Q: Were you alone when this conversation with Rosich took place?

A: That is correct.

Q: Okay. And this came out because of the problems that you were having with your subordinates.

A: That is correct.

(Certified Translation of Deposition of Guillermety, pp. 39–41). In addition, Guillermety also alleges in his affidavit that younger employees were treated differently than he was since they were allowed to deny allegations made against them while he was not given such an opportunity. (Affidavit of Guillermety, ¶¶ 3, 8).

█ Even considering all of this evidence proffered by Plaintiff in the light most favorable to him, the Court cannot conclude that Guillermety has produced even minimally sufficient evidence showing that he was terminated based on his age or national origin. First, the comment made by Porras, Guillermety's subordinate, is not probative of Puerto Rican Cement's reasons for Plaintiff's dismissal since Porras was not involved in the decision to terminate Plaintiff. As stated by the First Circuit, "[t]he biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case." *Medina Munoz*, 896 F.2d at 10. It is clear that Porras did not make the decision to terminate Guillermety, and further, Plaintiff has brought forth no evidence to show that Porras influenced Puerto Rican Cement's decision.

The comments made by Rosich and Taraza is also insufficient to show discriminatory animus. Although Taraza was Guillermety's supervisor and Rosich was involved in the decision to terminate Guillermety, the statements themselves do not show any age or national origin bias. The Rosich and Taraza comments were both made in the context of discussions regarding the way Guillermety should handle younger employees as their supervisor. Such statements about the need to have

patience when dealing with younger subordinates as well as differences in employment styles between the United States and Colombia do not indicate discriminatory animus. At most, they show management dealing with age and cultural differences between employees from different backgrounds.

■ Even if these statements are considered in conjunction with the "differential treatment" of younger employees, the Court cannot conclude that the evidence as a whole points to a discriminatory motive. *See Mesnick*, 950 F.2d at 824 (court must look at "aggregate package of proof" when deciding summary judgment in employment discrimination case). Plaintiff does not specify, aside from conclusory statements that he did not receive the same treatment as other employees regarding the allegations against him, how younger or non-Colombian employees were treated differently. (Affidavit of Guillermety, ¶¶ 5, 8). Plaintiff must at least specify the differential treatment he received so that the court can assess the evidence of discrimination on summary judgment. Thus, the conclusory allegations of differential treatment and comments referring to dealing with younger employees in the United States are not, as a whole, sufficient to show that Guillermety was discharged because of his age or national origin. *See Rodriguez–Cuervos v. Wal–Mart Stores, Inc.*, 181 F.3d 15, 21 (1st Cir.1999) (plaintiff failed to present sufficient evidence that reason for demotion was pretext for unlawful discrimination).

Therefore, for the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's claims under the ADEA and Title VII.

## B. Law 100 Claim for Age Discrimination and Law 80

Puerto Rican Cement also moves for summary judgment as to Plaintiff's claims under Puerto Rico Laws 80 and 100. Defendant argues that there was just cause for Guillermety's dismissal, and further, that even if there were no just cause, it has shown that the motive for his dismissal was not discriminatory animus.

Plaintiff counters by asserting that the issue of whether his dismissal was for "just cause" is an issue for a jury and not one to be disposed of on summary judgment. Guillermety disputes Defendant's claims that he was dismissed for a lack of confidence in his abilities to be a manager. He claims that he was told that the investigation revealed no substantial findings of improper conduct in a meeting with Attorney Quilichini, Rosich and Nazario. In addition, on Jule 19, 1997, Guillermety contends that Rosich and Taraza recommended he resign from his position, but said that the investigation produced no findings of improper conduct.

■ Law 100 is the Puerto Rico equivalent of the ADEA and Title VII; however, the federal and Puerto Rico statutes differ on the proof required to show discrimination. *See Cardona Jimenez v. Bancomerico de Puerto Rico*, 174 F.3d 36, 42 (1st Cir.1999); *Alvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.*, 152 F.3d 17, 27 (1st Cir.1998); *Aguayo v. R.J. Reynolds Tobacco Co.*, 670 F.Supp. 1094, 1098 (D.Puerto Rico 1987) (Pieras, J.). The main difference between the statutes is the burdens of proof imposed on employer and employee. *See id.* Law 100 establishes a rebuttable presumption that the employer has engaged in unlawful discrimination unless the employer can show that it had just cause to discharge the employee. *See* P.R.Laws Ann. tit. 29, § 148; *Alvarez–Fonseca*, 152 F.3d at 27.

■ Once a plaintiff has alleged an unjustified dismissal and proves by a preponderance of the evidence that he was actually or constructively discharged, the burden then shifts to the employer to prove by a preponderance of the evidence that it had just cause to dismiss the employee. *See id.* To determine what constitutes just cause in a Law 100 claim, a court looks to

the definition of just cause in the analogous statute, Law 80. *Alvarez–Fonseca,* 152 F.3d at 28 (discussing In *Baez Garcia v. Cooper Laboratories, Inc.,* 120 P.R.Dec. 145, 155, 1987 WL 448243 (1987)). If the employer fails to show just cause, the Law 100 presumption of discrimination is triggered, the burden of production and persuasion shifts from the employee, and the employer has to prove that the otherwise-unjustified dismissal was not motivated by discriminatory animus. *See id.* (citing *Ibanez–Benitez v. Molinos de Puerto Rico, Inc.,* 114 P.R.Dec. 42, 52, 1983 WL 204221 (1983))

Just cause to dismiss an employee under Law 80 includes various reasons including "improper or disorderly conduct," and "[r]epeated violations by the employee of the reasonable rules and regulations established for the operation of the establishment ..." P.R.Laws Ann. tit. 29 § 185b. The reasons offered by Puerto Rican Cement for Guillermety's dismissal fall within the statutory definition of just cause; nevertheless, Guillermety has presented sufficient evidence to create a genuine dispute as to whether or not he was fired for just cause.

According to Guillermety, the reasons given by Puerto Rican Cement for his termination—that he made inappropriate advances towards Ortiz and mishandled money and property—are a sham. He describes particular conversations in which he was told by management that the investigation into his alleged misconduct revealed nothing. In addition, Guillermety denies having made improper sexual advances toward Ortiz as well as the other allegations made against him. Thus, construing the facts in the light most favorable to Guillermety, as we must on summary judgment, the Court cannot conclude that Defendant met its burden to show that Plaintiff's termination was for "just cause."

Therefore, to prevail on summary judgment for Plaintiff's Law 100 claim, Puerto Rican Cement must show by a preponderance of the evidence that its decision was not based on age or national origin. The Court finds that Defendant has made such a showing. As fully discussed in the context of Plaintiff's ADEA and Title VII claims, the only evidence of age bias includes the comments made by Porras, Taraza and Rosich, and conclusory allegations of differential treatment. In addition to the scant evidence of age and national origin bias, Defendant points out that Guillermety was hired at the age of 49—when he was already within the protected age group—and was fired only eight months later. Further, two of the decision-makers, Taraza and Rosich, are older than Plaintiff.[2] Based on the evidence in the record, the Court finds that Defendant has satisfied its burden under Law 100 to show that age or national origin discrimination was not the motive behind Guillermety's dismissal. Therefore, Defendant's motion is **GRANTED** as to the Law 100 claim.

■ The Court, however, **DENIES** summary judgment as to Plaintiff's Law 80 claim. As discussed above, Guillermety has created a triable issue of fact as to whether or not there was just cause for his dismissal. As this is the essential inquiry in a Law 80 claim, the Court finds that it cannot grant summary judgment on this count.

■ The only remaining federal claim in this case, however, is Plaintiff's claim under the Fair Labor Standards Act, 29 U.S.C. § 201. As evidence regarding this claim was not presented or developed at the Initial Scheduling Conference nor on summary judgment, the Court ordered the parties to present briefs on this claim at the Pretrial Conference, scheduled for July 19, 1999. (docket No. 17, July 16, 1999). Nevertheless, Plaintiff's Law 80

---

**2.** Defendant also contends that Guillermety's replacement, Benjamin Roman, was 57 years old and, thus, older than Plaintiff. This issue, however, is contested since Guillermety claims that his real replacement was Porras, a younger employee.

claim does not "form part of the same case or controversy under Article III of the United States Constitution," as the Fair Labor Standards Act claim. 28 U.S.C. § 1367(a). The issue of whether just cause existed for Plaintiff's dismissal is not remotely related to wage and hour claims under the Fair Labor Standards Act and cannot form the basis of federal jurisdiction. "Any holding to the contrary would be .... in direct contravention of section 1367." *Futura Development of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7, 13 (1st Cir.1998). Thus, the Court declines to exercise jurisdiction over the Law 80 claim and hereby **DISMISSES** this cause of action **WITHOUT PREJUDICE.**

## IV. Conclusion

For the reasons set forth above, the Court hereby **DISMISSES** Plaintiff's claims under the ADEA, Title VII and Puerto Rico Law 100 **WITH PREJUDICE,** and his Law 80 claim **WITHOUT PREJUDICE.**

**SO ORDERED.**